## JAS. B. SHAW ET AL. v. GEO. M. FLEMING.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued January 6, 1891—Decided October 5, 1891.

[To be reported.]

(a) In assumpsit against Fleming for yarn sold and delivered, Fleming set up that he was merely a broker in the sale of the yarn to one Brooke for the plaintiffs, though guaranteeing the sale on the faith of a sample produced; that the quality of yarn delivered was unequal to the sample, and that plaintiffs arranged with Brooke directly, relieving defendant of responsibility:

1. In such case, plaintiffs should prove a sale of the yarn to Fleming, or fail in their action. If they sold by sample produced, and delivered yarn merchantable in quality and following the sample in kind,—the sale being prior to the act of April 13, 1887, P. L. 21,—defendant was liable to plaintiffs for the price thereof, unless released therefrom as a purchaser.

2. Evidence of an agreement between the plaintiffs and Brooke, as to the quality of the yarn, and that they would indemnify Brooke for any loss thereon, is admissible upon the question whether the defendant was the purchaser, but inadmissible to relieve him of his obligation to pay if he was such; nor, in such case, is the loss sustained by Brooke admissible as a set-off.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 321 January Term 1890, Sup. Ct.; court below, No. 351 September Term 1887, C. P. No. 1.

On October 15, 1887, James B. Shaw and O. L. Broadbent, trading as Richard Kershaw & Co., brought assumpsit against George M. Fleming, filing a statement of claim to recover for merchandise sold and delivered. An order of the court below refusing judgment for the plaintiffs for want of a sufficient affidavit of defence was affirmed by the Supreme Court, to No. 127 January Term 1888, on February 20, 1888: Shaw v. Fleming, 11 Cent. R. 620. Issue was then joined.

At the trial on October 23, 1889, plaintiffs proved and put in evidence their books of original entry showing five thousand pounds of worsted yarn, of the value of $5,422.14, charged to the defendant in February and March, 1887. The plaintiffs then produced testimony that the yarn was so sold, and that twelve bills, showing the terms of sale, to wit, a discount for cash of "2 per cent ten days," and "4 per cent ten days," were rendered to defendant and sent daily or every other day for nearly a month, and received without objection. The plaintiffs then rested.

Under objection, and exception to the plaintiffs, the defendant introduced testimony tending to sustain defences as follows: First, that the yarn delivered was not in accordance with the sample produced; second, that the defendant did not buy the yarn himself, but acted only as a broker in selling the yarn for the plaintiffs to one John W. Brooke, a manufacturer, though he guaranteed the sale on the faith of the sample; and third, a set-off of alleged damages sustained by Brooke in the manufacture and sale of cloths made in part from the yarn in suit. The third defence was based upon testimony as to an alleged conversation between Mr. Shaw, of the plaintiff firm, and said Brooke, to the effect that if there was anything wrong with the yarn, a portion of which was then in Brooke's looms and was alleged to be defective in quality, the plaintiff firm would make good the loss to Brooke.[1 to 8] This testimony sufficiently appears in the charge of the court below.

In rebuttal, the plaintiffs proved, inter alia, that they had

had a course of dealing with the defendant, in which yarn had been sold to the defendant and had been paid for by him; and they produced the written order, the first of a series of orders of which the yarn in suit was a part, directing plaintiffs to sell to him, the defendant, and to deliver the yarn to John W. Brooke.

The testimony being closed, the plaintiffs presented the following points for instruction:

1. If sale of the yarn in question was by the production of a sample, being prior to the act of April 13, 1887, it raised no implied warranty of the quality, strength, or twist of the yarn, or that it was fit for the particular purpose for which the defendant used it, but became a guaranty only that the yarn should be of the same kind as the sample, and be simply merchantable.[9]

2. If the plaintiffs delivered yarn simply merchantable, under the sample furnished, they are entitled to recover a verdict for the full amount.[10]

3. The series of twelve bills rendered from time to time to Fleming, the defendant, and unobjected to by him, became accounts stated, and as such binding upon him as to all the items and charges they contained; and if the bills or accounts so rendered ·show a sale, the defendant is estopped from denying such sale.[11]

4. The measure of damage, in such case as this, is the difference between the contract price of the yarn and its market value; any other damages are consequential and remote, and not such as arise from the breach of contract; nor can they be said to have entered into the contemplation of the parties when they made the contract, and as such are not recoverable, and cannot be set off against the plaintiffs' claim.[12]

5. The loss of defendant Fleming's vendee upon the manufacture and sale of cloths is not evidence of a set-off in defendant's favor for the alleged delivery of yarn of inferior grade to that contracted for; the set-off must arise between the parties to the suit.[13]

6. The defendant's claim of set-off is bad in that it is for unliquidated damages; there is no evidence of any specific claim for damages; there are no items given from which to determine the only measure of damage, the difference between the contract price and its market value at the time delivered.[14]

Charge of Court below.

7. Evidence of consequential damages resulting from the sale of cloths by the defendant's vendee, is not a subject of set-off under a contract of sale.[14a]

8. A claim of set-off, alleging that the amount of damage exceeds the amount of the demand, is of no avail; and there being no evidence of liquidated damage, the jury should find for the plaintiffs.[15]

9. The alleged conversation between Shaw, one of the plaintiffs, with Brooke, with regard to a claim on the yarn, is not evidence of the rescission of a contract, nor is it evidence of a contract, not having been made between the parties to the suit, it having none of the elements of a contract, and is without consideration.[16]

The following points for instruction were presented by the defendant:

1. That if you believe the defendant Fleming acted only as a broker for the sale of the yarn involved in this suit, there can be no recovery against him as a defendant.[17]

3. That Shaw, of plaintiff firm, made a new contract with John W. Brooke, agent at Pomeroy, Pennsylvania, and if the jury so find from the evidence, the plaintiff cannot recover from Fleming, and your verdict should be for the defendant.[18]

4. That the promises made by Shaw, of plaintiff firm, to John W. Brooke, agent, that future deliveries of yarn should be up to and equal to sample, became a term of the contract; and if the jury find that none of the yarn came up to sample, the plaintiffs cannot recover, and your verdict should be for defendant.[19]

6. That the plaintiffs cannot recover for unmerchantable yarn delivered; and if the jury believe that the yarn was unmerchantable, or that some portion of it was so, then the plaintiffs cannot recover for so much as proved unmerchantable.[20]

The court, BIDDLE J., charged the jury as follows:

The contention of Mr. Shaw, the plaintiff in this case, is that he had a continuous dealing commencing in 1886 and extending to some time in 1887 with Mr. Fleming, and that on one occasion Mr. Fleming came in, in the usual way, and ordered the amount of yarn which is in controversy in this suit, and that, in accordance with the order of Mr. Fleming, he delivered

this yarn to Mr. Brooke.   The delivery to Mr. Brooke and the receipt of the yarn by him is not denied.

The plaintiff contends that this was a simple, ordinary and absolute sale of yarn which he had on hand; and if that were so, the only obligation under which he would be is that that yarn should be merchantable under the name under which it was sold.   If, however, as Mr. Fleming alleges here, he took a sample to this manufacturer of the wool that he wanted, and the manufacturer undertook to manufacture that wool equal to that sample, Mr. Fleming would not be bound to accept it unless it was equal to the sample.   That would be the law if this was an ordinary sale of these goods ; and so the plaintiff contends it was, and that the yarn was merchantable and that, therefore, there is no redress or defence to this case against his complaint.

Mr. Fleming makes two defences to this claim ; and, in the first place, he says that this was a purchase by him as broker ; that the plaintiff knew perfectly well that he was a broker and not a manufacturer, and that Mr. Brooke having trusted him with a sample of the yarn that he wanted, he took that sample to Mr. Shaw and informed him that Mr. Brooke wanted yarn of that kind and that if he would make it he could make this sale.   And his allegation is that Mr. Shaw accepted that, and undertook to make the goods in accordance with that sample for Mr. Brooke, and he, Mr. Fleming, admits that if it was satisfactory to Mr. Fleming, he would guarantee the sale. That is the view which he takes of his position in this case ; that he was a mere broker, who, for a commission, had agreed to guarantee this sale ; and if the yarn had been satisfactory, if it had been in accordance with the sample which he delivered, he would have considered himself bound to guarantee this sale, and be responsible for it.   Of course, if you take that view of the case, under the evidence which has been submitted to you, and the different points bearing upon it have been called to your attention, both by counsel for plaintiffs and defendant, matters which they contend show either that it was a sale or that it was a brokerage—if, after considering those, you should consider that Mr. Fleming was a mere broker in this case, of course he would not be subject to the same rules as if he had been a purchaser; and if the goods, as he alleges,

had been satisfactory, he then would have had to pay for them.

But, in addition to that, there is another circumstance connected with the case. It appears that after the goods came into the possession of Mr. Brooke, who was to manufacture them, he was dissatisfied with the yarn that had been delivered. That seems to be admitted on all sides, and it is alleged that Mr. Brooke told Mr. Fleming to bring up Mr. Shaw, the manufacturer of the yarn, and Mr. Shaw admits that he went there on, I think, three different occasions; and Mr. Shaw was there, and Mr. Brooke was there, and the complaint was then made in regard to this yarn. [Mr. Fleming and Mr. Brooke, I think, both asserted that Mr. Shaw admitted that this yarn was not what it should be; that Mr. Brooke said "I am going to tear this yarn out of my place here, and send the whole of it back;" and that Mr. Shaw then said, "Why, don't do that; I cannot do anything with it, if you send that back to me; you go on and work up this yarn that you have got, finish what you have got on the looms, work it up, and if there is a loss I will stand it." That is the testimony, positively, of Mr. Fleming and Mr. Brooke, and I understand Mr. Shaw substantially to agree that that was pretty much what he said. He varied somewhat the phraseology, and it is for you to say whether that varied the nature of the contract. He did say, I think, that Mr. Brooke was to go on and he would make it good, or used some phraseology to that effect.] [22]

[Now, then, if Mr. Shaw chose to go on this occasion and, in the presence of Mr. Fleming and Mr. Brooke, persuaded Mr. Brooke not to send this yarn back to him, and directed him to work it up and sell it, and Mr. Brooke in accordance with that, did work it up and sell it, I think Mr. Fleming would be relieved from any loss, if there was a loss in this case; because, if the yarn was not what it ought to have been, Mr. Fleming and Mr. Brooke, working it up together, would have had a right to send it back, and if they were prevented from sending it back by the direction of Mr. Shaw not to send it back, but to go on and manufacture it and then sell it for what it would bring, that relieved Mr. Fleming from any responsibility,] [22] because Mr. Shaw was not bound to say this; he was not bound to intervene at all. If he had chosen to say nothing

Arguments.

the case would remain as it was, uncomplicated by any remarks or assurances of this kind. [But the agreement was, certainly, not without consideration, because Mr. Brooke agrees to go on manufacturing the whole of this article, instead of sending it back, which would be an ample consideration for the promise to pay for any loss that occurred.] [22]

[So, if you believe that that was what occurred at that time, and that Mr. Shaw really gave those directions, and in accordance with his directions it was manufactured and was sent to certain parties for sale, and from their account-sales presented to you here, it appears, as they allege, that these goods sold for very much less than the goods would have sold for, if Mr. Brooke had received the yarn to which he was entitled; then the defendant would be entitled to that credit on this account.] [22]

It is for you to say, therefore, what view you chose to take of this case. If you find it was an absolute sale, then, without more, of course Mr. Fleming would be responsible, subject to the conditions which I have stated. If you believe it was a mere brokerage transaction, of course he would not be subject to the liabilities of a purchaser. [And, if you believe that Mr. Shaw chose to intervene himself and make this subsequent contract with Mr. Brooke as to the manufacture of these goods, I think that relieved Mr. Fleming of his responsibility in this case.] [24]

I think I have answered most of the points. I decline to answer the plaintiffs' points, as I have answered them in the charge. The defendant's points are affirmed.

—The jury returned a verdict for the defendant. A rule for a new trial having been discharged, judgment was entered on the verdict on December 3, 1890 ; whereupon the plaintiffs took this appeal, filing twenty-five assignments specifying, inter alia, that the court erred :

1–8. In the admission of defendant's offers.[1 to 8]

9–16. In the refusal of plaintiffs' points.[9 to 16]

17–20. In the affirmance of defendant's points.[17 to 20]

22, 24. In the portions of the charge embraced in [ ] [22 24]

*Mr. William S. Divine* (with him *Mr Samuel B. Huey*), for the appellants.

That, if the sale of the yarn in question was by the production of a sample it raised no implied warranty of quality, counsel cited: Boyd v. Wilson, 83 Pa. 325; Selser v. Roberts, 105 Pa. 242. That the bills rendered became accounts stated: Colket v. Ellis, (C. P.), 1 W. N. 247; Sergeant v. Ewing, 30 Pa. 75; Bevan v. Cullen, 7 Pa. 281. That the measure of damages, if there was a breach of any contract, was the difference between the contract price of the yarn and its market value: Ogden v. Beatty, 137 Pa. 197; Billmeyer v. Wagner, 91 Pa. 92; Gould v. Gage, 118 Pa. 565.

*Mr. George B. Carr*, for the appellee.

Counsel cited: West Republic M. Co. v. Jones, 108 Pa. 65; Scheppers v. Stewart, 11 W. N. 106; Hare on Contracts, 518, 541; Holloway v. Jacoby, 120 Pa. 583; Fogel v. Brubaker, 122 Pa. 7; Benj. on Sales, 4th Am. ed., 983; Erie City I. Works v. Barber, 106 Pa. 125; Lynch v. Trust Co., 18 Fed. R. 486; Sims v. Striblen, 16 Phila. 9; Warren v. Coal Co., 83 Pa. 437; Hunt v. Gilmore, 59 Pa. 450.

OPINION, MR. JUSTICE McCOLLUM:

There are twenty-five specifications of error in this case, but not so many questions. It is an action brought by the appellants to recover the price of worsted yarn which they allege they sold to the appellee in February and March, 1887, and by his directions delivered to one John W. Brooke, a manufacturer of cloths. There is no dispute concerning the quantity or price of the yarn. The defences to the claim are manifold and somewhat complicated. The appellee says that the yarn was not sold to him, but to Brooke, and that he acted in the transaction simply as a broker; that the yarn was sold by sample, and at the request of the appellants he guaranteed the sale; that they subsequently entered into a new contract with Brooke, by which the appellee was released from liability to them, and, finally, that the yarn was not equal to the sample, and by reason of its inferior quality Brooke sustained a loss of about three thousand dollars in excess of the price he agreed to pay for it.

In considering these defences in their order, we inquire, first, whether the yarn was sold to the appellee. If it was

not, that is a sufficient answer to the appellants' claim and the end of the case. If it was, and the sale was by sample, it was the duty of the vendors to deliver yarn which was merchantable and corresponded in kind with the sample. The sale was prior to the act of April 13, 1887, P. L. 21, relating to sales by sample, and is therefore unaffected by it. If the vendors delivered yarn which was merchantable and followed the sample in kind, they were entitled to recover the price of it from their vendee. Did they release him from his liability as purchaser by anything which passed between them and Brooke, respecting the quality of the yarn and his loss upon it? There was certainly no formal contract between them, nor any agreement whatever to which the appellee was a party. Brooke testified that the yarn was of inferior quality and that he threatened to cut it out of his looms, but that, on the assurance of the appellants that they would stand the loss, if any, he proceeded to work it up. In all this, if true, there was no interference between him and his vendor, and nothing to impair the obligation of the latter to the parties from whom he purchased. It might have a bearing on the question whether the yarn was sold by the appellants to Brooke or Fleming, but could not destroy a contractual relation existing between Fleming and the appellants. There was no element of a novation in it. If it obliged the appellants to account to Brooke for his loss on the sale of cloths manufactured from the yarn, it did not make such loss a set-off in this action.

The testimony in relation to this loss was irrelevant and confusing, and its presence in the case coupled with the instructions upon it may have defeated the appellants. Instead of excluding the evidence when offered, or subsequently withdrawing it from the jury, as he should have done, the learned judge instructed them that the appellee was entitled to a credit for the loss, although he told them at the same time that the talk or agreement under which he held that the appellants became liable to Brooke for it, destroyed the appellee's liability to them. Under these instructions, the appellee was allowed to appropriate in payment of a claim, from which it was ruled that he was released, a loss sustained by his vendee. But, as we have seen, if the appellee was a purchaser of the yarn, his obligation to pay his vendors the price of it, was not affected

Opinion of the Court.

by anything which passed between them and Brooke, and there was error in the admission of evidence as to the latter's loss, and in the instructions founded upon it. If Brooke was the purchaser of the yarn from the appellants and they sued him for the price of it, we might properly inquire how their respective rights and obligations under the sale were affected by what passed between them concerning the quality of the yarn and a loss by the vendee. In such case, if it was ascertained that the parties made the sample the standard of quality, and the yarn delivered was inferior to it, the rule by which the vendee's damages should be measured and the competency of the evidence offered to establish them might require consideration. But as these questions are not legitimately before us, and as the discussion of matters not involved in the case is profitless and often mischievous in its consequences, we express no opinion upon them. Indeed, we cannot intelligently consider them until the parties have submitted their claims and proofs with reference to the issues joined between them.

We summarize our conclusions in the case as follows: The appellants claim that they sold the yarn to the appellee, and they must prove this claim or fail in their action. If they sold the yarn to him by sample, and delivered yarn which was merchantable and followed the sample in kind, they are entitled to recover from him the price of it, unless they have released him from his liability to them as a purchaser. The evidence of what passed between them and Brooke respecting the quality of the yarn, and their responsibility to him for a loss, is admissible on the question whether Brooke or Fleming was their vendee, but it is not sufficient to relieve the latter from his obligation to pay for the yarn if he was the purchaser of it; nor is a loss which his vendee sustained admissible as a set-off in this action for the price. To the extent that the rulings complained of are in conflict with this opinion, the specifications of error are sustained.

Judgment reversed and a venire facias de novo awarded.